**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| JAMES WOODS, | : |
| | : Civil Action No. 18-2512(RMB) |
| Petitioner | : |
| | : |
| v. | : **OPINION** |
| | : |
| GEORGE ROBINSON, *et al.*, | : |
| | : |
| Respondents. | : |
| | : |

**BUMB**, District Judge

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Pet., ECF No. 1) filed by Petitioner James Woods ("Petitioner"), an inmate confined in Northern State Prison in Newark, New Jersey. Respondents filed an answer opposing habeas relief. (Answer, ECF No. 8.) Pursuant to Federal Rule of Civil Procedure 78, the Court will determine the claims presented in the petition on the written submissions of the parties.

I.    PROCEDURAL HISTORY and FACTUAL BACKGROUND

Petitioner was convicted by a jury of all six counts for which he was indicted, which were: first degree armed robbery in violation of N.J. Stat. Ann. § 2C:15-1(a)(1); third-degree possession of a knife for an unlawful purpose in violation of N.J. Stat. Ann. § 2C:39-4(d); fourth-degree unlawful possession of a knife in violation of N.J. Stat. Ann. § 2C:39-5(d); second-degree conspiracy to commit armed robbery in violation of N.J. Stat. Ann. §§ 2C:5-2, 2C:15-1(a)(1); and fourth-degree resisting arrest by flight in violation of N.J. Stat. Ann. § 2C:29-2(a). Id. at *1. Petitioner was sentenced to a seventeen-year prison term with an eighty-five percent period of parole ineligibility under the No Early Release Act ("NERA"). Id.

The factual background and procedural history were summarized in part by the New Jersey Superior Court, Appellate Division on Petitioner's direct appeal.[1]

> Both co-defendants [Petitioner and Perry Alston] were tried together. Sergeant Rafael Martinez of the Camden City Police Department testified that on August 27, 2008, he was assigned to patrol the Broadway Avenue area of Camden. Martinez testified that the area was designated a "high crime" area where "a lot of drug sales" took place.
>
> At around 2:00 p.m., Martinez was on routine patrol in a police vehicle on William Street behind a methadone clinic, when he "observed

---

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C.§ 2254(e)(1).

two black males and a white male standing in the parking lot" of the clinic. The white male was later identified as the victim, Steven Phillips. According to Martinez, the two black males, later identified as co-defendants, fled the scene when they observed his vehicle:

> As soon as the two black males observed my presence, they were looking right at me, they immediately took off running. Of course, I said something's going on. I immediately drove up to the victim with my window rolled down from the passenger side. He told me, "They just robbed me."

Martinez chased the two individuals on foot and observed them enter an alleyway. Martinez testified there was no exit from the alleyway, "so they had nowhere to go."

As Martinez entered the alleyway, he instructed the two men "to stop and get down," but they did not comply. He then observed Alston "drop an object onto the ground," and testified that defendant ran past him while he was trying to detain Alston. According to Martinez, Alston said, "I was selling him pills." Martinez arrested Alston and found several different pills in a prescription pill container in his pocket. Martinez also recovered the object that Alston dropped- a folding knife. Other officers apprehended defendant.

Phillips testified at trial he was at the clinic for counseling and to receive methadone. According to Phillips, he left the clinic between 12:00 and 12:30 p.m., and as he was leaving two men approached him and began to harass him. "As I was approached, basically the gentleman pulled a knife out on me. Another gentleman went for my wallet. I tried to knock his hand down, away, a couple of times. Then the one gentlemen told the other

gentleman to stab me." Phillips identified
Alston as the man with the knife. Phillips
said he "flung" his wallet, containing
"roughly" fifteen or sixteen dollars, and his
medication. Defendant took the money from the
wallet and both men ran when they saw Martinez
arrive.

Phillips followed defendant after he ran past
Martinez and watched other officers detain
him. Phillips testified the police asked him
how much money was stolen from his wallet, and
he told them, "I believe it was a ten, a five,
and a one, or a ten and six ones." According
to Phillips, the money in defendant's pocket,
"was balled up and it was exactly what I said
at the time." Phillips identified the knife
collected by Martinez as the knife that was
used in the robbery."

Neither defendant nor Alston testified or
presented any witnesses. In summation, defense
counsel argued, "This was all a ruse by Mr.
Phillips to get out of the fact that he's a
drug user still using drugs caught in the act
of buying drugs."

State v. Woods, A-1010-10T4, 2013 WL 4436474, *1-2 (N.J. Super.

Ct. App. Div. Aug. 21 2013).

The Appellate Division affirmed Petitioner's conviction and

sentence on August 21, 2013. Id. On March 20, 2014, the New Jersey

Supreme Court denied Petitioner's petition for certification. See

State v. Woods, 88 A.3d 190 (N.J. 2014). On June 18, 2014,

Petitioner filed a pro se petition for post-conviction relief

("PCR"). (Answer, Ex. Ra10, ECF No. 8-12.) Petitioner then filed

a counseled brief in support of his petition for post-conviction

relief ("PCR") that was denied on the merits. (Answer, Ex. Ra11,

4

ECF No. 8-13.) The Appellate Division affirmed the PCR Court on May 3, 2017. State v. Woods, A-4161-14T2, 2017 WL 1731030 (N.J. Super. Ct. App. Div. May 3, 2017). On December 8, 2017, the New Jersey Supreme Court denied Petitioner's subsequent petition for certification. State v. Woods, 177 A.3d 116 (N.J. 2017).

Petitioner then filed the present habeas petition on February 22, 2018. (Pet., ECF No. 1.) Petitioner raises six "legal arguments" which he supports with twenty-four "claims" [2] that he submits implicate his Fourth, Fifth, Sixth, Eighth, and Fourteenth amendment rights. His claims are as follows-

"Legal Argument Point One"

"Petitioner'[s] writ of habeas corpus as a matter of federal law an[d] its constitution must be granted conviction vacated an order issued for petitioner immediate release whereinas [sic] petitioner has been wrongly convicted and falsely imprisoned in violation of his 4th, 5th, 6th, 8th, and 14th, federal constitutional rights."

1. "In support of petitioner's legal arguments he claims as a matter of state and federal law he is being illegally detained in violation of his 4th amendment illegal seizure of his person."

---

[2] Many of what Petitioner characterizes as claims are not stand-alone claims but rather supporting facts and arguments.

2. "Fact presents co-defendant Perry Alston was apprehended by Detective Martinez as the one who robbed the victim Phillips at knife point. The record disclose [sic] that Detective Martinez police report states the second Black male stated 'this guy robbed him pointing at Perry Alston, then took flight.' "

3. "Petitioner points to the May 20, 2010 trial transcripts at page 75-76 that support his claim that detective Martinez never radioed in a robbery in progress, black male/robbery suspect fled, never gave no type of description relevant of petitioner whatsoever."

4. "Petitioner point[s] to the May 20, 2010 [t]rial transcripts at page 112-112 where the alleged victim Phillips clearly states that he is observing petitioner being detained by the police held in the police vehicle according to Phillips he is watching the police search petitioner who is alleged to have Phillips money in his pocket.  The amazing thing about this testimony Phillips never says hey that's the guy that robbed me. Hey that's my money. Detective Martinez does not say hey that's the Black male that got passed. Co-defendant Perry Alston does not say Hey that's the guy that conspired with me to rob Phillips."

5. "What's even more amazing is the fact that Phillips says he watching Petitioner be detained, pat frisked that mean

Detective Martinez is watching the same thing. See May 20, 2010 trila [sic] transcripts at page 138 Line 17-25, page 139 Line 1-9."

6. "Petitioner's claim of innocence is supported by Detective Whitney testimony clearly establishing that both Phillips and Detective Martinez lied. Especially Phillips, because its no way on Earth that he's standin [sic] watching along with Detective Martinez and other police petitioner being searched by other police where the pat and frisk turn up proceeds from the robbery as they alleged petitioner was detained at the crime scene."

7. "And in the same sentence [sic]/same event Detective Whitney let petitioner go free. See May 20, 2010 Trial transcripts at page 151 Line 10-25."

8. "Petitioner claim the above assertions supports his claim that he has been wrongly convicted and the above facts makes clear that Detective Martinez, Phillips, or Perry Alston never identified him as the second Black Male who fled the scene, the record makes clear that neither of the three gave or positively ID petitioner, consistent with Attorney General Guidelines in Identifying Suspects, violating his 14th U.S.C.A. due process."

9. "Petitioner contends and claims his 4th, U.S.C.A. illegal seizure of his person was violated when he was illegally

seized and detained by Detective Whitney and Detective Martinez without probable cause for detention and question and the latter arrest violating <u>Terry v. Ohio</u>, petitioner was detained far removed and remote from the arrest of Perry Alston drove to a crime scene for show identification; however released when neither the alleged victim Phillips, Detective Martinez or Perry Alston, could make identification."

10. "Petitioner contends and claims he was only identified by Detective Whitney who detained petitioner for a half of hour without probable cause and taking him to a crime scene although released he was still exposed to the dangers of misidentification providing the record does not disclose no dispatch record given his description as the culprit or suspect."

11. "Petitioner contends and claims that his conviction and sentence is the fruits of the poisonous tree resulting from the initial complaint # 0408/W/2008/009117 that is unconstitutional because it is derived from 4th, 5th, and 14th U.S.C.A. federal violations."

12. "Petitioner contends and claim that his conviction is void and violated of his 4th, 5th, and 14th due process rights because the record does not disclose constitutional as a matter of state and federal law how Detective R. Martinez arrived at the conclusion of charing [sic] petitioner with

8

conspiracy to commit robbery, because no written or recorded audio or video evidence exists to substantiate that petitioner conspired, agreed, solicit with Perry Alston to commit robbery. In light of petitioner's alibi defense, in fact co-defendant Perry Alston testified during his opening informing the jury he and petitioner did not know each other. Although there is no evidence to support Perry Alston assertion that he and petitioner was in an area where people came to get high and in fact, both were at the scene because they were getting high [2T 40-5 TO 25]. Petitioner claims that nothing in this testimony establishes conspiracy to commit robbery, nothing to support the issuance of the complaint or an arrest warrant in petitioner name. No probable cause violation of petitioners 4th, 5th, 6th, 8th, 14th due process rights. Constituonally [sic] a writ must be granted and petitioner James woods released immediately."

"Legal Argument Point Two"

"Petitioner writ of habeas corpus as a matter of federal law and its constitution must be granted and conviction vacated an order issued for petitioner immediate release whereinas [sic] the identification of petitioner at the police administration building instituted by Detective R. Martinez was violative of the Attorney General Guidelines

violating Petitioner's 5th & 14th U.S.C.A. due process rights."

13. "Petitioner contends and claim that there is no audio/video, written or recorded photo array procedure of the victim Phillips identifying petitioner as suggested by Detective Martinez who stated that back at the police administration building he asked he state that petitioner was identified by one of the officers at the scene and during his taped statement . . . "

14. "Petitioner contends and claim that there was no photo array done period violating the attorney general guidelines and considering the fact that the victim nor Detective Martinez did not and could not ID petitioner when he was detained at the crime scene supporting petitioner claim that any and all identification of him was in fact impermissibly suggestive as well as the tape[d] statement given or taken by Detective Martinez is and was highly suggestive violating petitioner 6th, 5th and 14th amendment rights to due process."

15. "Petitioner contends and claims based on the facts of the case that Detective Martinez observe one white male and two black males, the due process of a Wade hearing should have commenced addressing the State v. Cromedy issue of cross racial identification where scientific study show that people not of the same race have extreme difficulty identifying

someone from a different race. One of the lead causes of mis-identification which petitioner claim[s] has occurred here causin[g] him to be wrongly convicted and fasley [sic] imprisoned violative of his 4th, 5th, 6th, 8th, 14th amendment due process rights a writ must issue for his immediate release the relief he seeks."

"Legal Argument Point Three"

16. "Petitioner contends and claims that count one of the indictment is fundamentally flawed and can not withstand the due process laws under the constitution wherein true facts of this case does not reflect the finding that petitioner did inflict bodily injury or use force upon Stephen Phillips petitioner claim that the prosecutor submission in this regard is fabricated there is on elements established as a matter of law that constitutionally supports a prima facie of first degree a result of a victim receiving inflicted bodily injury."

17. "Petitioner contends and claim that count two of the indictment is fundamentally flawed and cannot withstand the due process laws under the constitution where true facts show that petitioner did not knowingly possess a certain weapon, a knife with a purpose to use it unlawful . . . There is no evidence to support a finding of actual, joint or constructive possession for these reasons a writ must issue. . . "

"Legal Argument Point Four"

"Petitioner writ of habeas corpus as matter of federal law and its constitution must be granted an order issued for his immediate release where as his 17 year 85% sentence constitutes manifest injustice and violates his 5th and 14th U.S.C.A. due process rights."

18. "Petitioner contends and claim that his sentence is illegal and unconstitutional where he was wrongly convicted for first degree robbery, subject to the version of the New Jersey No Early Release Act, stipulated by the prosecution fabricated assention [sic] that the victim Stephen Phillips sustained serious bodily injury was not only a false opinion, but unsupported by competent evidence, therefore petitioner 17 years 85% sentence constitutes a manifest injustice and must be vacated is the relief petitioner seek, 5th, 14th U.S.C.A.

"Legal Argument Point Five"

"Petitioner writ of habeas corpus as a matter of federal law and its constitution must be granted an order issued for his immediate release, where as the model jury charge given to the jury is an incorrect misstatement of the law and violates, 5th, and 14th U.S.C.A. due process rights rendering his conviction void."

19. "Petitioner contends and claim the trail [sic] judge unconstitutionally and inappropriately instructed the jury

that petitioner was legally responsible for Co-Defendant Perry Alston being armed with the folding knife and that the jury must determine if this folding knife qualifies as a deadly weapon . . ."

20. "Petitioner contend[s] and claims there is no evidence to support that he was Perry Alson [sic] accomplice, again petitioner was never I.D. at the crime scene by no one- in fact released. Next asserting the jury charge was incorrect and erroneous which violated his 5th, 6th, 14th, U.S.C.A. due process rights because erroneous jury instructions are poor candidates [sic] for rehabilitation under the harmless error philosophy 14th U.S.C.A."

21. "Petitioner contends and claims as a matter of law and its constitution the essential ingredient to a fair trial was violated because the jury charge was not adequate and understandable instructions given to the jury Constitutional, the charge is road map to a guide the jury and without an appropriate charge a jury can take a wrong turn in its deliberations. Petitioner claim[s] that's what happened here. The charge was not appropriate causing the jury to take the wrong turn in its deliberations causing a guilty verdict against the weight of the evidence."

"Legal Argument Point Six"

22. "Petitioner contend[s] and claims his 6th amendment was

    violated by his trial lawyer, appeal lawyer, his P.C.R.

    lawyer and second appeal who was all ineffective for not

    being able to get petitioner's conviction and sentence

    reversed and vacated due to the constitutional violations

    outlined herein . . . "

23. "Conclusion" "For the foregoing reasons petitioner writ of

    habeas corpus should be granted because he has been wrongly

    convicted, falsely imprisoned werein [sic] the state

    criminal proceeds violated petitioner's 4th, 5th, 6th, 8th,

    and 14th, U.S.C.A. due process rights; requests conviction

    and sentence vacated is the relief he seeks."

(Id. at 25-33.)

    Respondents filed an answer on August 22, 2018. (Answer, ECF

No. 9.)

II.  DISCUSSION

    A.    Standard of Review

    28 U.S.C. § 2254(d) provides:

    > An application for a writ of habeas corpus on
    > behalf of a person in custody pursuant to the
    > judgment of a State court shall not be granted
    > with respect to any claim that was adjudicated
    > on the merits in State court proceedings
    > unless the adjudication of the claim--
    >
    > (1) resulted in a decision that was contrary
    > to, or involved an unreasonable application
    > of, clearly established Federal law, as

determined by the Supreme Court of the United
States; or

(2) resulted in a decision that was based on
an unreasonable determination of the facts
in light of the evidence presented in the
State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the United States Supreme Court decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).

B.   Analysis

Although Petitioner lists his twenty-four claims, under six unique sub-headings or "legal arguments", some claims are repeated under multiple subheadings.

1.  Petitioner's Fourth Amendment Claims [3]

    a.  The Parties' Arguments

In Petitioner's "Legal Argument 1", Petitioner lists twelve "claims", one through seven and nine through twelve [4], where he appears to be challenging the legality of his initial arrest and detention. (Pet., ECF No. 1.) More specifically, he appears to be arguing that there was no probable cause for his arrest and that it invalidates his subsequent conviction. (Id. at 26-28.) In support of his claim, Petitioner argues that the record does not contain any evidence of the victim identifying Petitioner as the person who robbed him. (Id. at 26.) Moreover, he submits that although he was initially apprehended, he was released shortly thereafter. (Id. at 27.) Petitioner also alleges that his conviction is invalid because his detention and arrest violated Terry v. Ohio, 392 U.S. 1 (1968), and also that his conviction and sentence are fruits of the poisonous tree. (Id. at 28.)

---

[3] Fourth Amendment claims are not cognizable in a federal habeas petition brought under 28 U.S.C. § 2254 pursuant to the United States Supreme Court's opinion in Stone v. Powell, 428 U.S. 465 (1976), nonetheless the merits of Petitioner's claims fail.

[4] A portion of Petitioner's argument in "Claim 12" appears to be challenging the sufficiency of the evidence and will be analyzed by the Court with its analysis of "Legal Argument Point Three" where Petitioner raises the bulk of his sufficiency of the evidence claims. "Claim 8" appears to be challenging identification and will be addressed with the bulk of Petitioner's identification-related claims in "Legal Argument Point Two."

Respondents do not address this particular issue in their filing. (Answer, ECF No. 8.)

## b. State Court Decision

The record does not reflect that Petitioner previously raised this claim. While this claim is unexhausted, it can nonetheless be denied on the merits. See Granberry v. Greer, 481 U.S. 129, 131, 135 (1987) (noting that the exhaustion requirement is not a jurisdictional requirement to the exercise of habeas corpus jurisdiction over the merits of a state prisoner's claims and a district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim.").

## Analysis

Even if for the sake of argument, Petitioner was arrested without probable cause, he cannot challenge his detention as he was eventually convicted of the charged crimes.

In the context of an arrestee who is subsequently convicted for the criminal behavior precipitating the arrest, even if the initial arrest did lack probable cause, he still cannot challenge his detention as he was eventually convicted of the charged crimes. See Gerstein v. Pugh, 420 U.S. 103, 119 (1975) ("[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the

ground that the defendant was detained pending trial without a determination of probable cause.")

Generally, a Fourth Amendment false arrest claim requires that the arrestee establish: "(1)that there was an arrest; and (2), that the arrest was made without probable cause." <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680(3d Cir. 2012). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." <u>Orsatti v. New Jersey State Police</u>, 71 F,3d 480, 482-83 (3d Cir. 1995)(internal citations omitted). A false imprisonment claim arises when a person is arrested without probable cause and is subsequently detained pursuant to that unlawful arrest. <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995). "False arrest and false imprisonment overlap; the former is a species of the latter." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007).

Here, the record reflects that Rafael Martinez of the Camden City Police Department was alone in his patrol car when he observed three men who were later identified as Petitioner, his co-defendant Perry Alston and the victim, Steven Phillips, standing in a parking lot. (Answer, Ex. Rta 2, ECF No. 8-27 at 26.) Once Petitioner and Alston observed Martinez in his police cruiser, they began to run away. (<u>Id.</u> at 27.) Steven Philips, on the other hand, approached Martinez' vehicle and yelled, "[t]hey just robbed me." (<u>Id.</u>)

Martinez called the dispatcher for backup and pursued the two fleeing individuals until he caught up with them. (Id. at 27-28.) Martinez then observed Alston drop something to the ground which turned out to be a folding knife that was consistent with the victim's description of the knife used in the robbery. (Id. at 28-29, 49.) Martinez arrested Alston and Petitioner was able to run away although he was detained by other officers almost immediately. (Id. at 44.) Once Petitioner was detained, police officers retrieved "balled up" money that amounted to what the victim alleged had been stolen from him (Id. at 57.)

Petitioner has not established that probable cause to arrest him did not exist. The facts are that Petitioner and his co-defendant were observed within close proximity of a third individual who told the police that they had just robbed him. Further, Sergeant Martinez did not lose sight of the two fleeing men before he finally caught up with them and arrested Alston.

As to Petitioner's argument that the victim did not accuse Petitioner of robbing him when the additional officers showed up, this argument fails. The victim notified Sergeant Martinez and that triggered his pursuit of the two suspects as well as his call for the assistance of additional officers. Moreover, Officer Changa Whitney of the Camden Police Department testified about how Petitioner was initially detained on scene but eventually released less than an hour later because Sergeant Martinez had left the

scene with the other suspect and no other police personnel were available to provide details of the offense. (Id. at 81.) Further, the record reflects that the victim was transported to the police station to provide a statement shortly after Petitioner was initially detained. (Id. at 57.)

To the extent that the Petitioner alleges that his detention and arrest implicates the seminal Terry v. Ohio, 392 U.S. 1 (1968) case, the Court disagrees. In Terry, the Supreme Court held that an officer who has a reasonable, articulable suspicion that criminal activity is afoot may conduct a brief, investigatory stop. Id. at 30. Petitioner's argument is foreclosed by the Supreme Court's holding in Illinois v. Wardlaw, 528 U.S. 119, 124-25 (2000), where the Court expanded upon its holding in Terry and held that "unprovoked flight" constituted reasonable suspicion. Here, Sergeant Martinez testified that his mere presence on the street spurred Petitioner and Alston to flee before the victim made him aware of the robbery that had just occurred. Therefore, the facts of this case fit squarely within the parameters established in Wardlaw, and Petitioner's argument fails.

Finally, Petitioner invokes the "fruit of the poisonous tree" doctrine, although it does not seem to apply in this case. Petitioner does not specify that any particular evidence qualifies as the "fruit" of the illegal police action but rather that his

conviction and sentence were the "fruits." [5] Therefore, the "fruit

of the poisonous tree" argument fails.

Thus, this claim is denied.

2.    Ground Two

a.    The Parties' Arguments

Petitioner next contends that the identification procedure,

or rather the lack thereof, violated his Fifth and Fourteenth

Amendment rights. (Pet., ECF No. 1 at 29.) Petitioner submits that

the police failed to conduct a photo array in violation of the

"Attorney General Guidelines." (Id.) He further submits that

neither the victim, Sergeant Martinez, nor his co-defendant

identified him at the crime scene. Lastly, he argues that he may

have been misidentified as a result of the cross-racial

identification in this case. (Id.)

Respondents contend that this claim is unexhausted as

Petitioner did not raise it in state court and that it is also

procedurally defaulted.[6] (Answer, ECF No. 8 at 20-24.) Nonetheless,

they also submit that the claim fails on the merits. (Id. at 25-

---

[5] Although there was testimony about the victim's stolen money
and pills, the items was never alleged to have been recovered
and were not entered into evidence. (Answer, Ex. Rta5, ECF No.
8-30 at 14.)

[6] The record does not reflect that this claim was deemed
procedurally defaulted by any state court as it does not appear
to have ever been raised in state court.

29, 38-40.) They submit that Petitioner's co-defendant unsuccessfully raised a similar argument alleging a failure to conduct an identification procedure, in his post-trial motion. (Id. at 39.)

b. State Court Decision

The record does not reflect that Petitioner previously raised this claim. While this claim is unexhausted, it can nonetheless be denied on the merits. See Granberry, 481 U.S. at 131, 135.

c. Analysis

Petitioner contends that the identification procedure employed, violated the "Attorney General Guidelines." [7] However, the record does not reflect that an identification procedure occurred. Moreover, Petitioner does not cite to any precedent that requires an identification procedure when police observe the suspect while in commission of the crime and pursue and apprehend the suspect shortly thereafter. Although it was ruling on Petitioner's co-defendant's post-trial motion, the trial court rejected a similar argument that the police were obligated to conduct an identification procedure. (Answer, Ex. Rta5, ECF No. 8-30 at 19-20.) The trial court opined in relevant part, as follows—

> . . . [T]hat Detective Martinez never
> performed a photo array or a lineup at the

---

[7] Petitioner does not distinguish between the federal Attorney General Guidelines or its New Jersey counterpart, *Attorney General Guidelines for Preparing and Conducting Photo and Live Lineup Identification Procedures* ("Guidelines").

police station. That type of situation is not
required in all instances, and particularly
not in a situation here where we have
Detective Martinez testifying that upon
turning the corner he saw three people, two of
whom immediately ran. Those two were
constantly in his sight both of them and
apprehended one of the two individuals.
. . .

So, this is not a case where actual
identification of a defendant in terms of
whether the defendant was involved at all is
at issue here.

(Answer, Ex. Rta5, ECF No. 8-30 at 19-20.)

The trial court's ruling succinctly identifies the flaw in this claim. The facts of this case do not support a constitutional claim despite Petitioner's insistence that there was a flawed identification.

Petitioner also claims that he was entitled to a hearing pursuant to United States v. Wade, 388 U.S. 218, 241 (1967), in light of the possibility of misidentification when a cross-racial identification occurs. Petitioner relies on the New Jersey Supreme Court's opinion in State v. Cromedy, 158 N.J. 112 (1999). In Cromedy, the New Jersey Supreme Court held that "[a] cross-racial instruction should be given only when, as in the present case, identification is a critical issue in the case, and an eyewitness's cross-racial identification is not corroborated by other evidence giving it independent reliability, [,such as] forensic evidence or other eyewitness account." Id. at 132.

Here, the record reflects that the victim, Steven Phillips, was white and the Petitioner and his co-defendant were black. The record is silent about Sergeant Martinez's race and/or ethnicity. More importantly, Petitioner is relying on a state rule to support a right that does not extend to federal constitutional law. Nonetheless, the record does not reflect that there were any issues of cross-racial identification in this matter and Petitioner's due process claim fails.

Therefore, this claim is denied.

### 3. Sufficiency of the Evidence

#### a.   The Parties' Arguments

In Petitioner's "Legal Argument Three," he submits in an inartful manner, that counts one and two of the indictment violate his due process rights as they were not supported by the evidence. (Pet., ECF No. 1 at 30.) Further, in Petitioner's "Legal Argument One," he submits under "Claim 4" and "Claim 12," that his co-defendant did not implicate him in the conspiracy. (Id. at 27-28.)

Respondents submit that Petitioner's sufficiency of the evidence claims were properly denied as meritless in the state court. (Id. at 30-32).

#### b. State Court Decision

On habeas review, the district court must review the last reasoned state court decision on each claim. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The highest state court

decision with respect to this claim is the Appellate Division's opinion on direct appeal. The Appellate Division addressed this claim as follows:

> On appeal, defendant first argues "that under the evidence presented, his convictions cannot stand." Pursuant to Rule 2:10-1, a ruling on a motion for a new trial "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." Our task is to determine if a "trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present." State v. Cartier, 91 N.J. 86, 96 (1982). "Where the jury's verdict was grounded on its assessment of witness credibility, a reviewing court may not intercede, absent clear evidence on the face of the record that the jury was mistaken or prejudiced." State v. Smith, 262 N.J.Super. 487, 512 (App. Div.), certif. denied, 134 N.J. 476 (1993). Here, the court's factual findings are supported by sufficient credible evidence in the record, State v. Locurto, 157 N.J. 463, 472 (1999), and it correctly applied well-settled legal principles. We therefore affirm substantially for the same reasons stated by the trial court.
> . . .
> After the jury rendered its verdict, defendant moved for a new trial pursuant to Rule 3:20-1. The tried court denied the motion, reasoning as follows:

> > [Defendant's first] argument is that the physical evidence does not support the testimony of the victim, Steven Phillips, and that Mr. Phillips lacks credibility and, therefore, his testimony could not have reasonably been believed by the jury. The argument then is essentially since that is the sole source of the State's proofs as to the theft element of the robbery .

25

. . the robbery conviction cannot stand.

. . . The argument is that Mr. Phillips's testimony that he was robbed cannot be believed because; one, the items he said were taken from him were never recovered, two, Detective Martinez saw both defendants the entire time that they fled the scene and did not see either of them discard anything. Other than Mr. Alston discarding the knife in the alley; and, three, neither defendant was found to have on his person money in the exact denomination that Mr. Phillips said was taken from him. However there are two problems with this argument: first, Detective Martinez did not observe both of the defendants the entire time. Once he cornered both the defendants in the alley Mr. Woods ran past him. Mr. Woods was later apprehended by another police officer. The jury could reasonably have believed that Mr. Woods discarded the stolen items after he left the alley.

Another problem with this argument is that it assumes that there was some sort of fatal inconsistency in Mr. Phillip's testimony regarding the amount of money taken from him. Mr. Phillips testified that the amount taken was either three fives and two ones or two fives and two ones. He further testified that he saw defendant Woods in the custody of another police officer on the street and that the officer required Mr. Woods to empty his pockets and that the balled up money in the pocket "matched exactly what was taken from him."

. . .

Moreover, as eluded to before, proof of theft does not require that the items stolen be recovered and introduced into evidence. Theft simply requires proof that the defendant knowingly took control over property of another with a purposes to deprive the person of the property. Here, the testimony Steven Phillips about the events behind the methadone clinic were sufficient by itself to establish the elements of theft.

. . .

Defendant Woods also asserts that Mr. Phillips lacked credibility because of conflicts in his testimony about when he arrived at the clinic. More precisely as elaborated on here the argument is essentially that . . . Mr. Phillips tried to tailor his testimony in light of the discovery and production of the progress notes from Parkside Clinic.

That issue was explored in detail on cross-examination, and during trial cross-examination I believe Mr. Phillips admitted at one point that he could possibly have been hanging around in the area for another hour or two hours. There was questioning from [defense counsel].

. . .

As the model jury charge on credibility of witnesses states "the jury may accept all of a witness' testimony, a portion of it or none of it."

> Mr. Phillips testimony about the robbery itself was compelling and was corroborated by the testimony of Sergeant Martinez who testified that he arrived on the scene as the event was taking place and that a few seconds later as he stopped his vehicle right next to Mr. Phillips and rolled down his window, Mr. Phillips told him "they just robbed me."
>
> So, for all of these reasons I find after having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses that it does not clearly and convincingly appear that . . . there was a manifest denial of justice under the law. Therefore, the defendant Woods's motion for a new trial is denied.

Woods, 2013 WL 4436474 at *2-4.

### Analysis

A claim that the jury's verdict was against the weight of the evidence is "essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process." Douglas v. Hendricks, 236 F.Supp.2d 412, 435–36 (D.N.J. 2002) (Walls, J.) (citation omitted). The United States Supreme Court articulated the standard governing a challenge to the sufficiency of the evidence in Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Court held that a reviewing court must ask itself "whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (citation omitted). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Id. at 324 n. 16; see also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998). State court factual determinations are presumed to be correct. See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

Count one of the indictment charged Petitioner with first degree armed robbery in violation of N.J. Stat. Ann. § 2C:15-1(a)(1); Count two of the indictment charged Petitioner with third-degree possession of a knife for an unlawful purpose, in violation of N.J. Stat. Ann. § 2C:39-5(d); Count three of the indictment charged Petitioner with second-degree conspiracy to commit armed robbery, in violation of N.J. Stat. Ann. §§ 2C:5-2 and 2C:15-1(a)(1).

Under New Jersey law, the elements of first-degree robbery are-

a. A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

(b). Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actors attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

N.J. Stat. Ann. § 2C:15-1.

Under New Jersey law, the elements of fourth-degree unlawful possession of a weapon are- "Any person who knowingly has in his possession any other weapon under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree." N.J. Stat. Ann. § 2C:39-5(d).

Finally, under New Jersey law the elements of conspiracy are-

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempts or solicitation to commit such crime; or

(2) Agrees to aid such other person or persons in the planning or commission of such

> crime or of an attempt or solicitation to
> commit such crime.

N.J. Stat. Ann. § 2C:5-2.

At Petitioner's trial, the victim testified that he was approached by Petitioner and his co-defendant as he was exiting a building. (Answer, Ex. Rta2, ECF No. 8-27 at 54.) He further testified that one of the men " . . . pulled a knife out on me. Another gentleman went for my wallet. I tried to knock his hand down, away, a couple of times. Then the one gentleman told the other gentleman to stab me." (Id.) The victim testified that he flung his wallet at his assailants in response to one of them lunging at him with a knife. (Id. at 55.) The victim provided an in-court identification of both men. (Id. at 54-55.)

Further, Sergeant Martinez testified that he observed the two suspects, Petitioner and his co-defendant, near the victim until they took off running upon seeing Martinez in his police vehicle. (Id. at 27.) The state also admitted into evidence the knife that Petitioner's co-defendant dropped to the ground shortly after he stopped running from Martinez. (Id. at 31-32.)

Petitioner argues that the armed robbery count fails because there was no evidence of the victim sustaining any injuries. (Pet., ECF No. 1 at 30). However, the New Jersey statute does not exclusively require bodily injury for the act to constitute an armed robbery. Further, Petitioner seeks to undermine the

conspiracy conviction by arguing that his co-defendant, who represented himself at trial, "testified during his opening informing the jury he and petitioner did not know each other. (<u>Id.</u> at 28.) This argument fails because his opening statements do not constitute evidence and the trial judge gave a curative instruction to the jury as a result of some of the co-defendant's comments during his opening arguments. (Answer, Rta2, ECF No. 8-27 at 23.) To conclude, Petitioner's claim that he was denied due process because of the insufficient evidence is without merit. The Appellate Division's decision was not contrary to clearly established federal law. Therefore, this claim is denied.

    4. <u>Sentence</u>

       a. <u>The Parties' Arguments</u>

In Petitioner's next claim, he contends that his seventeen-year sentence violates his Fifth and Fourteenth Amendment rights. (Pet., ECF No. 1 at 31.)[8]

Respondents assert that Petitioner's sentencing claim was rightly denied by the state court as he was sentenced within the statutory maximum and the sentence was supported by the record. (Answer, ECF No. 8 at 34.)

       b. <u>State Court Decision</u>

---

[8] Petitioner raised his sentencing claim on PCR but it was deemed procedurally barred pursuant to New Jersey Rule 3:22-5, which bars claims that were previously adjudicated. (Answer, Ra13, ECF No. 8-32 at 1.)

Petitioner previously challenged his sentence before the Appellate Division, which denied the claims as follows-

> Defendant also challenges his sentence. "An appellate court should disturb the sentence imposed by the trial court only in situations where the sentencing guidelines were not followed, the aggravating and mitigating factors applied by the trial court are not supported by the evidence, or applying the guidelines renders a particular sentence clearly unreasonable." State v. Roach, 146 N.J. 208, 230, cert. denied, 519 U.S. 1021, 117 S.Ct. 540, 136 L.Ed.2d 424 (1996).
>
> In this case, there is sufficient credible evidence to support the trial court's findings regarding the aggravating factors and the absence of mitigating factors; the court correctly applied the sentencing guidelines set forth in the Criminal Code: and the court reached a conclusion that could have reasonably been made upon a weighing of the relevant factors. State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Ghertler, 114 N.J. 383, 388-89 (1989). As a reviewing court, we may modify a sentence "when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 364 (1984). This is not such a case.

Woods, 2013 WL 4436474 at *6.

c.   Analysis

The legality and length of a sentence are generally questions of state law over which this Court has no jurisdiction under § 2254. See Chapman v. United States, 500 U.S. 453, 465 (1991); Harmelin v. Michigan, 501 U.S. 957, 994-95 (1991); Wainwright v. Goode, 464 U.S. 78 (1983). A federal court's ability to review

state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated or enhanced by indigencies." See Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).

Petitioner has provided no support for his claim that his seventeen-year sentence was unconstitutional. See 28 U.S.C. § 2254(a). ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") Although he was extended-term eligible, the judge denied the state's motion to impose such a term.

Petitioner has not raised a colorable federal claim. Therefore, this claim is denied.

     5.   Jury Instructions

       a.   The Parties' Arguments

Petitioner's next ground for relief is that the trial court erroneously instructed the jury " . . . that petitioner was legally responsible for Co-defendant Perry Alston being armed with the folding knife." (Pet., ECF No. 1 at 31.)

Respondents assert that this claim was appropriately denied by the Appellate Division upon Petitioner's direct appeal.[9] (Answer, ECF No. 8 at 20.)

### b. State Court Decision

The Appellate Division denied this claim on Petitioner's direct appeal as follows-

> Defendant also argues for the first time that the court provided "deficient" instructions on accomplice liability. When a defendant is charged with armed robbery based on accomplice liability, the Supreme Court has held a court's instruction must "clearly require the jury to find that defendant had shared the purpose to commit a robbery with a weapon." State v. Weeks, 107 N.J. 396, 405 (1987). In appropriate cases, a court must also instruct the jury that an accomplice may be convicted of lesser-included offenses. State v. Bielkiewicz, 267 N.J. Super. 520, 531 (App. Div. 1993).

Woods, 2013 WL 4436474 at *4.

### c. Analysis

A habeas petitioner who challenges state court jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions," or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."

---

[9] Petitioner's direct appeal brief explicitly raises the issue of whether Petitioner possessed the knife within the context of an accomplice liability charge. (Answer, Ex. Rta4, ECF No. 8-6 at 30-42.)

<u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997). Therefore, when a habeas petitioner challenges a jury instruction provided in a state criminal proceeding,

> the only question for [the federal court] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction . . . , [the federal court] inquire[s] "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And [the court] also bear[s] in mind . . . that [the federal courts] "have defined the category of infractions that violate "fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

<u>Estelle v. McGuire</u>, 502 U.S. 62, 72-73 (1991)(citations omitted).

This Court has reviewed the accomplice liability instruction which the trial court provided to the jury. (Answer, Ex. Rta3, ECF No. 8-28 at 57-61.) The instructions were appropriate in light of the evidence before the jury, particularly the testimonial evidence. The record reflects that the victim and Sergeant Martinez provided eyewitness testimony about the events surrounding the robbery. This includes the victim's testimony that Petitioner's co-defendant wielded the knife, while Petitioner told him to stab the victim. (Answer, Ex. Rta2, ECF No. 8-27 at 54.)

Therefore, this claim is denied.

6.   Ineffective Assistance of Counsel

a.   The Parties' Arguments

Finally, Petitioner argues that his trial, appellate and PCR counsel were ineffective for "not being able to get petitioners conviction and sentence reversed and vacated due to the constitutional violations outlined herein . . . " He further argues that counsel was ineffective for failing to incorporate his alibi into his defense and for failing to investigate Sergeant Martinez' police misconduct. (Pet., ECF No. 1 at 32.) Petitioner argues that Martinez's purported demotion from sergeant to detective is illustrative of his misconduct and subsequent sanction. (Id.)

Respondents rightly submit that the ineffective assistance claim is unexhausted but nonetheless fails on the merits. (Answer, ECF No. 8 at 40-47.) Respondents also argue that the PCR court properly denied Petitioner's claim that counsel failed to adequately cross-examine Martinez.  However, that particular claim was not raised within the context of any purported police misconduct. (Answer, Ex. Ra11, ECF No. 8-13 at 16).

b. State Court Decision

The record does not reflect that Petitioner previously raised this claim. While this claim is unexhausted, it can nonetheless be denied on the merits. See Granberry, 481 U.S. at 131, 135.

c.   Analysis

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. Second, the defendant must show that he was prejudiced by the deficient performance. Id. This requires showing that counsel's errors deprived the defendant of a fair trial. Id.

Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." Id. at 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the Strickland court referred to as the "distorting effects of hindsight." Id. The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). Furthermore, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

"With respect to the sequence of the two prongs, the Strickland Court held that 'a court need not determine whether

counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" Rainey v. Varner, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting Strickland, 466 U.S. at 697)).

Here, Petitioner has not raised a valid constitutional claim for any of the stand-alone claims he raised in "Legal Argument Point One" through "Legal Argument Point Five." Consequently, counsel was not ineffective for not raising these claims at his trial. As to Petitioner's claim that counsel failed to introduce Petitioner's alibi evidence and failed to investigate Sergeant Martinez's testimony, Petitioner does not provide one iota of supporting facts or arguments. The court notes Respondents argument that trial counsel took a more reasonable approach by arguing that while Petitioner was at the crime scene, it was only to engage in drug use and not to commit any violent crime or theft. (Answer, ECF No. 8 at 44.)

Moreover, appellate counsel cannot be deemed ineffective for failing to raise an issue that would not have resulted in the reversal of his client's conviction. See Buehl v. Vaughn, 166 F.3d 163, 174 (3d Cir. 1999). As for Petitioner's claim that his PCR counsel was ineffective, that claim is denied. Section 2254

explicitly excludes from the scope of federal habeas relief a claim based upon ineffective assistance of PCR counsel. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); see also Coleman v. Thompson, 501 U.S. 722, 752-53, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (holding there is no constitutional right to counsel in state post-conviction relief proceedings and, consequently, ineffective assistance of counsel in state post-conviction relief proceedings does not provide ground for federal habeas relief); Taylor v. Horn, 504 F.3d 416, 437 n. 17 (3d Cir.2007) (noting same and citing Coleman). Therefore, this claim is denied.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.    CONCLUSION

In the accompanying Order filed herewith, the Petition for habeas relief under 28 U.S.C. § 2254 is denied.

Dated: October 23, 2019

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**